UNITED STATES of America,
Plaintiff-Appellant,

v.

Glen L. WRIGHT, Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Stanley L. WILLMITT,
Defendant-Appellee.

UNITED STATES of America,
Plaintiff-Appellant,

v.

Gean CANNON, Defendant-Appellee.

Nos. 85–1348 to 85–1350.

United States Court of Appeals,
Tenth Circuit.

May 15, 1986.

Stewart C. Walz, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., and Samuel Alba, Asst. U.S. Atty., with him on brief), Salt Lake City, Utah, for plaintiff-appellant.

M. David Eckersley of Houpt & Eckersley, Salt Lake City, Utah, for defendants-appellees Cannon and Wright.

James N. Barber of Barber, Verhoef & Yocom, Salt Lake City, Utah, for defendant-appellee Willmitt.

Before BARRETT and MOORE, Circuit Judges, and THEIS, District Judge.*

JOHN P. MOORE, Circuit Judge.

This consolidated case is a companion to *United States v. Cardall,* 773 F.2d 1128 (10th Cir.1985), and it arises from the same indictment and surrounding facts. As in *Cardall,* this appeal concerns the suppression of evidence by the trial court, and as in *Cardall,* we conclude the trial court erred in its holding. This appeal also presents the question of whether the transfer of money from one state to another by wire constitutes a "transportation" within the

* Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation.

meaning of the National Stolen Property Act, 18 U.S.C. § 2314. We answer the question affirmatively and hold that the government does not have to prove a physical portage of legal tender as an element of the offense of interstate transportation of money obtained by fraud. As a result, we conclude the trial court erred in dismissing the count of the indictment which charged this offense.

## I.

■ Although the trial court's determination of the suppression issue presented in this appeal involved the search of a different location than that considered in *Cardall*, the court's rationale underlying the determination was the same as in the prior case. We consequently hold that our previous decision governs this case as well.

The district court held that the affidavit for the search warrant for premises located in the City of Commerce, California, did not state sufficient probable cause to believe that a crime had been committed or that evidence of a crime would be found on the premises. The court also held that the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), was inapplicable to this case because the affidavit presented to the issuing magistrate was devoid of sufficient facts to show probable cause; therefore, a reasonably well-trained officer could not believe in good faith that the warrant was valid.

The facts underlying this case have been set forth already in *Cardall;* therefore, we shall here deal only with those that are distinctive to this matter. The searches which were the subject of the *Cardall* opinion occurred in Salt Lake City, Utah, the month prior to those which are the subject of this appeal. The basis for the instant search was the telephone linkage which permitted "electronic mail" between certain of the Utah premises and the location searched in California.

FBI Agent Robin Brown worked on the investigation of some of the defendants in this case for seven months before he obtained the warrant in question. He supported his application for the warrant by his own affidavit and that of a fellow agent. For some reason not entirely clear, the issuing magistrate chose to disregard the second affidavit and relied solely upon that of Agent Brown in deciding to issue the warrant.

In substance, the Brown affidavit related: the background of the FBI investigation of the defendants' activities; the previous search of the Salt Lake City premises and the product of those searches; the existence of a wire which permitted the transaction of activities between the Utah and California sites by electronic mail; the statements made by the person who sold the telephone equipment installed at both places regarding the capacity of that equipment; the agent's personal experience investigating similar allegedly fraudulent activities; and the statements of participants in the activity under investigation. In particular, the affidavit stated that as a result of the searches previously conducted in Salt Lake City, it had been discovered that more than $19 million had been invested in the entities under investigation through more than 5,000 contracts. It had also been established that investors were told they would receive a return of 96% per year and that their investments would be used to factor accounts payable in other companies. Brown stated the investigation disclosed that none of those companies actually existed and that the promised return was not made to investors.

■ Harkening upon the decision he had reached based on the affidavit supporting the search warrant in *Cardall*, the district judge concluded the Brown affidavit was also conclusory and thus insufficient to meet the standards of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). He also held, on the grounds we found erroneous in *Cardall*, that the good faith rule of *United States v. Leon* was inapposite. After considering the district court's essentially identical rulings in *Cardall* and the instant case, we simply reas-

sert and adopt the holdings set forth at greater length in *Cardall*, 773 F.2d at 1131–33. The statements of the affiant were not conclusory when considered as a whole. The results of the actual investigation, showing the nature of the acts committed, the means by which they were perpetrated, the experiences of an alleged victim of those acts and the participants in some of those acts, coupled with the prior experience of the investigating agent and the results of the Salt Lake City searches, gave ample probable cause to support the search, especially within the context of the "common sense" review mandated by *Gates*. Moreover, since the affidavit relied upon by the magistrate who issued the warrant was not devoid of factual support, the agents executing the search were entitled to rely in good faith upon the decision of that magistrate as provided in *Leon* and *Cardall*.

## II.

■ The final issue presented here is whether the trial court erred in dismissing count 33 of the indictment. That count charged:

> [Defendant Cannon] *did transport,* cause to be transported and aid, abet, counsel, command, induce, and procure the transportation of *$18,070 stolen, converted and taken by fraud* from Salt Lake City ... to Honolulu, Hawaii, and ... [Defendant] then *knew the $18,070 to have been stolen, converted, and taken by fraud* ... all in violation of Title 18, United States Code, Sections 2314 and 2.

(Emphasis added.) The trial court granted defendant Cannon's motion to dismiss this count on the basis that it did not charge a crime cognizable under § 2314. The trial court held that although an interstate transaction had occurred, "no physical carriage of an interstate character was involved in the wire transfer of funds." Reading § 2314 "restrictively" the court was "reluctant to expand the scope of section 2314 ... to wire transfers of funds, when it seems clear such conduct is charge-

able as a crime under 18 U.S.C. § 1343." We respectfully disagree with this conclusion because §§ 1343 and 2314 prohibit different acts.

One must carefully examine both sections to comprehend the basic distinction between them. First, it must be recognized here that § 2314 contains five subsections, each of which constitutes a separate offense. Defendant Cannon was charged with violation of the first subsection, which states:

> Whoever *transports* in interstate or foreign commerce any ... *money,* of the value of $5,000 or more, *knowing the same to have been ... taken by fraud* ....
>
> ....
>
> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

(Emphasis added.) Stripped of the verbiage inapplicable to this case, § 2314 clearly applies to the knowing interstate transportation of the *fruits* of a fraudulent act. The section contrasts with § 1343, which states:

> Whoever, having devised ... any scheme ... to defraud, or for obtaining money ... by means of false or fraudulent pretenses ... *transmits* ... by means of wire ... *communication* in interstate or foreign commerce ... *for the purpose of executing such scheme* ... shall be fined not more than $1,000 or imprisoned not more than five years, or both.

(Emphasis added.) Clearly, this section does not pertain to the usage of a wire to transfer the *fruits* of a fraudulent act; it prohibits the use of a wire to *effect* the fraud in the first instance.

While § 2314, as charged here, bars the interstate transportation of the product of a fraud, § 1343 bars the commission of the fraudulent act itself. The fraud and the transportation of the fruits of fraud are two separate acts which, by their very nature, exist in separate temporal frames. Hence, both statutes create two crimes which can be separately charged, contrary

to the conclusion of the trial court, and the crime charged here is exclusively within § 2314.

■ The remaining issue left to be pursued is whether a transfer of money by wire is a "transportation" within the meaning of the first subsection of § 2314. Defendant does not contend that the interstate transportation of fraudulently obtained money in excess of $5,000 is not an offense. The only question is whether there has to be a physical portage of that money.

Put in the frame viewed by the trial court, the question becomes: does inclusion of the wire transfer of money as a means of transportation in interstate commerce expand the scope of § 2314? We think not.

In *United States v. Roby*, 499 F.2d 151 (10th Cir.1974), and *United States v. Newson*, 531 F.2d 979 (10th Cir.1976), we recognized that proof of actual physical transportation of forged documents was not essential to conviction under § 2314. Although the convictions in both these cases were under a different subsection of § 2314 than that with which we deal here, the difference is without distinction.[1] The rationale behind those cases is that the essence of the offense is the interstate movement of forged securities, not the means by which the interstate transportation is effected. The same rationale applies here, because the essence of this offense is placing the fruits of crime in interstate commerce. The means are neither significant nor delineated in the statute. Indeed, in *United States v. Gilboe*, 684 F.2d 235, 238 (2d Cir.1982), *cert. denied*, 459 U.S. 1201, 103 S.Ct. 1185, 74 L.Ed.2d 432 (1983), the court stated:

The question whether the section [§ 2314] covers electronic transfers of funds appears to be one of first impression, but we do not regard it as a difficult one. Electronic signals in this context are the means by which funds are transported. The beginning of the transaction is money in one account and the ending is money in another. The manner in which the funds were moved does not affect the ability to obtain tangible paper dollars or a bank check from the receiving account. Indeed, we suspect that actual dollars rarely move between banks.... The primary element of this offense, transportation, "does not require proof that any specific means of transporting were used."

(Citations omitted.)

Defendant argues that *Gilboe* is of no value to this inquiry because he contends the Second Circuit expressed a contrary view in *United States v. Johnpoll*, 739 F.2d 702 (2d Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 571, 83 L.Ed.2d 511 (1984). Yet, as defendants candidly recognize, the *Johnpoll* court referred to the word "transport" contained in § 2314 only in dictum expressed in a footnote. That reference is not significant nor does it merit more than it implies.

■ Defendant also maintains that since 18 U.S.C. § 2311 defines "money" as "the legal tender of the United States," actual currency must be carried in interstate commerce before a violation of § 2314 occurs. The argument is artful, but not persuasive.

There is nothing within the language of § 2314 which suggests that "money" in its common form must be transported in interstate commerce as an element of the offense. The gravamen of the crime, as previously noted, is the movement of illegally obtained money from one locale to another. That money changes form during the process, if that is indeed the fact, is insignificant. What is significant is, when the transaction is completed, money exists at the final destination. This interpretation is consistent with the intent of Congress manifest in the very language of the statute.[2]

---

1. The subsection charged in those cases reads: "Whoever, with unlawful or fraudulent intent, transports in interstate ... commerce any ... forged ... securities ... knowing the same to have been ... forged ... etc."

2. Indeed, the National Stolen Property Act has a broad purpose. Congress intended the Act would be a deterrent to the commission of interstate crime, and it should be interpreted in light of that intent. *United States v. Sheridan*, 329

None

One might question whether this interpretation impermissibly broadens the definition of the word "transport." Again, we think not. The ordinary meaning of the word is defined as: "to transfer or convey from one person or place to another." *Webster's Third New International Dictionary* 2430 (1981). That meaning unquestionably applies to a transfer of money by wire from one state to another. Accordingly, we conclude the trial court erroneously dismissed count 33.

The judgment of the trial court is reversed, and the case is remanded.

U.S. 379, 67 S.Ct. 332, 91 L.Ed. 559 (1946); *McElroy v. United States,* 455 U.S. 642, 102 S.Ct.

1332, 71 L.Ed.2d 522 (1982).