UNITED STATES of America,
Plaintiff–Appellant,

v.

René CORRAL–CORRAL,
Defendant–Appellee.

No. 89–8004.

United States Court of Appeals,
Tenth Circuit.

March 28, 1990.

**928**

Lisa E. Leschuck, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with her on the brief), Cheyenne, Wyo., for plaintiff-appellant.

Glenn A. Duncan, Laramie, Wyo., for defendant-appellee.

Before LOGAN and BALDOCK, Circuit Judges and PHILLIPS, District Judge.*

PHILLIPS, District Judge.

## I. INTRODUCTION

On April 18, 1988, four grams of cocaine and $298,919.00 in cash were seized from René Corral–Corral's vehicle pursuant to a traffic stop and consent search near Laramie, Wyoming. Several hours later, law enforcement officers obtained a search warrant from a California state municipal judge for Corral's residence in Pittsburg, California. Pursuant to this search warrant, the officers seized one kilogram of cocaine, a small quantity of marijuana, a Browning B–80 12–gauge shotgun, a Remington 22–caliber bolt action rifle and a Browning 380 automatic handgun.

In a thorough opinion, the United States District Court for the District of Wyoming upheld the traffic stop and consent search of Corral's vehicle, but suppressed the evidence seized from Corral's residence, rejecting the state municipal judge's probable cause determination. *United States v. Corral–Corral*, 702 F.Supp. 1539, 1547–51 (D.Wyo.1988). Specifically, the district court found that "a small quantity of drugs and a large sum of money found in a vehicle pursuant to a consent search [did not] amount to probable cause to search a residence 1000 miles away." *Corral*, 702 F.Supp. at 1548. Moreover, the district court refused to apply the "good faith exception" to the exclusionary rule as set forth in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), concluding that "the affidavit was 'so lacking in the indicia of probable cause as to render official belief in its existence unreasonable.'" *Corral*, 702 F.Supp. at 1550.

The government appeals pursuant to 18 U.S.C. § 3731.[1] Assuming but not holding

---

* Honorable Layn R. Phillips, United States District Judge for the Western District of Oklahoma, sitting by designation.

**1.** The statute provides in pertinent part:

> An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts [sic] suppressing or excluding evidence ... in a criminal proceeding, not

that the affidavit fails to establish probable cause, we believe the district court erred in refusing to apply the "good faith exception" to the exclusionary rule as set forth in *Leon*. Specifically, we find that the affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, and hold that the officers' reliance on the probable cause determination of the state municipal judge was objectively reasonable. *Leon*, 468 U.S. at 923, 926, 104 S.Ct. at 3420, 3422. Accordingly, we REVERSE.

## II. STANDARD OF REVIEW

■ Whether the "good faith exception" to the exclusionary rule should be applied is a question of law, subject to *de novo* review by this court. *United States v. Leary*, 846 F.2d 592, 606 (10th Cir.1988).

## III. BACKGROUND

On the afternoon of April 18, 1988, while heading west on I–80 approximately thirteen miles west of Laramie, Wyoming, defendant-appellee René Corral–Corral was stopped for speeding by a state patrolman. Corral's driver's license listed his address as 110 Northstar Drive, Pittsburg, California. His vehicle, a 1983 Ford Thunderbird, displayed a California license plate but was registered in California under the name of Javier Padilla. When questioned about the registration, Corral informed the patrolman that he was able to purchase the car at a discounted price of $4,000.00 because he was willing to pick it up in Aurora. Authorities later learned that Corral was returning to California from Aurora, Illinois.

With Corral's consent, the patrolman searched the luggage located inside the automobile's trunk and discovered a black suitcase containing $298,919.00 in cash. Corral denied any knowledge of the money. A short time later, a backup patrolman recovered four grams of cocaine from a small toiletry bag found in the automobile's passenger compartment. Although the patrolman had not informed Corral where he found the cocaine, upon viewing the substance, Corral promptly claimed "[t]hat wasn't in the bag when I put the other things in there." *Corral*, 702 F.Supp. at 1541.

Corral was arrested and transported to Laramie where authorities placed him in the custody of two agents of the Wyoming Division of Criminal Investigation. A federal Drug Enforcement Administration official informed the agents that contact had been made with Pittsburg, California detectives who were in the process of making an initial warrantless entry into the premises at 110 Northstar Drive to prevent the possible destruction of contraband. Wyoming agent Tony Hinton phoned Sergeant Evan Kohler, head of the Pittsburgh police department's narcotics division, and advised him of the facts surrounding Corral's arrest. Agent Hinton twice more phoned Sergeant Kohler, the latter time to inform him that Corral would soon be using the phone. Corral's repeated collect calls to 110 Northstar Drive were refused. *Id.* at 1541–42.

At 1:35 a.m. on April 19, 1988, about seven hours after authorities seized the premises without a warrant, a California state municipal judge signed a search warrant for 110 Northstar Drive. The affidavit in support of the warrant, prepared by Sergeant Kohler, detailed the stop of Corral, his consent to search the automobile and the results of the search. The affidavit further indicated that at the time of his arrest, Corral reported his address as 110 Northstar Drive, Pittsburg, California. Supplemental portions of the affidavit described the conduct of two of Corral's acquaintances who arrived at 110 Northstar

made after the defendant has been put in jeopardy and before the verdict ... if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. Section 3731 limits our review to the district court's order suppressing evidence. As a result,

the district court's rulings upholding the consent search are not the subject of this appeal. Accordingly, at this juncture, we accept as correct the district court's findings adverse to Corral, although Corral preserves the right to challenge such findings upon the entry of any final judgment.

Drive while the officers were awaiting the presentation of the search warrant to the state judge. Based upon both this information, and his education and experience, Sergeant Kohler formed the opinion that Corral was a drug trafficker operating out of 110 Northstar Drive. The search of the premises disclosed one kilogram of cocaine, a small quantity of marijuana, indicia of Corral's occupancy, and several firearms. *Id.* at 1542, 1547–48.

Corral was indicted in the Wyoming federal district court for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846, and for interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3). Prior to trial, Corral moved to suppress the fruits of the purportedly illegal search of 110 Northstar Drive under the exclusionary rule of the fourth amendment. Following a lengthy suppression hearing, Corral's motion to suppress the evidence seized during the search of his residence was sustained by the district court. *Corral*, 702 F.Supp. at 1551. The government now seeks interlocutory review of the district court's suppression order.

## IV. THE WARRANTLESS ENTRY OF CORRAL'S RESIDENCE

At the suppression hearing, Corral asserted that because the initial warrantless entry at 110 Northstar Drive violated the fourth amendment, the evidence seized from the premises necessarily must be suppressed as fruit of the poisonous tree. The district court concluded that the entry and securing of the premises was unjustified for lack of probable cause but did not explain the attendant consequences. *Corral*, 702 F.Supp. at 1548–49. We believe both Corral and the district court misapprehended the import of the warrantless entry.

In *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the Supreme Court addressed the issue of whether "an earlier illegal entry ... requires suppression of evidence seized later from a private residence pursuant to a valid search warrant which was issued on information obtained by the police before

the entry into the residence." *Id.* at 797–98, 104 S.Ct. at 3382. The Court held that where an independent source is present for a search warrant under which evidence is seized, the legality or illegality of an initial warrantless entry has no bearing on the admissibility of the evidence. The Court rejected the notion that "but for" the illegal entry, the suspects could have destroyed evidence used against them: "The essence of [defendant's argument] is that there is some 'constitutional right' to destroy evidence. This concept defies both logic and common sense." *Id.* at 816, 104 S.Ct. at 3391.

*Segura* controls our resolution of this first issue. The issuance of the search warrant and discovery of the cocaine, marijuana and firearms within the residence were wholly unrelated to the initial warrantless entry. The evidence was uncovered only as a result of the search conducted pursuant to the warrant. Moreover, none of the information on which the warrant was secured related to the initial warrantless entry. Because the evidence in our case, like in *Segura*, was the product of the search pursuant to the warrant, not the initial warrantless entry, the legality of the warrantless entry is not at issue. *See id.* at 814, 104 S.Ct. at 3390; [Record, Tr. of Sept. 6, 1988, Suppression Hearing at 271].

## V. THE SEARCH OF CORRAL'S RESIDENCE: THE PROBABLE–CAUSE CONTROVERSY

The legality of the search of Corral's residence, however, presents a separate question. Whether the district court properly suppressed the evidence obtained in the search of 110 Northstar Drive depends on whether the search warrant was supported by probable cause as required by the fourth amendment, or alternatively, whether the search was conducted by officers who in good faith believed that the warrant was valid under the fourth amendment. In 1813, Chief Justice Marshall defined the doctrine which is central to our decision:

[T]he term "probable cause," according to its usual acceptation, means less than

evidence which would justify condemnation.... It imports a seizure made under circumstances which warrant suspicion.

*Locke v. United States,* 11 U.S. (7 Cranch) 339, 347, 3 L.Ed. 364 (1813).

■ Nearly two hundred years later, the doctrine continues to spark judicial debate. In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court adopted a "totality-of-the-circumstances approach" to the "common-sense, practical question" of probable cause. *Id.* at 230, 103 S.Ct. at 2328. Noting that probable cause determinations involved "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," the Court reiterated: " '[T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " *Id.* at 231–32, 103 S.Ct. at 2328–29 (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). In so stating, the Court expressed a "strong preference" for searches authorized by warrant so as to encourage the use of the warrant process and lessen any intrusion upon protected interests:

> [W]e have repeatedly said that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts." "A grudging or negative attitude by reviewing courts toward warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant;" courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a common-sense, manner.

*Illinois v. Gates,* 462 U.S. at 236, 237 n. 10, 103 S.Ct. at 2331 n. 10 (citations omitted); *accord United States v. Peveto,* 881 F.2d 844, 850 (10th Cir.), *cert. denied sub nom.,* — U.S. ——, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (magistrate's probable cause determination entitled to "great deference"); *Kaiser v. Lief,* 874 F.2d 732, 734 (10th Cir.1989) (magistrate is not constrained by "limitations on his use of common sense"). Accordingly, a judicial officer's decision to issue a search warrant is afforded "great deference." *United States v. Shomo,* 786 F.2d 981, 983 (10th Cir.1986) ("[W]e are more likely to affirm a law enforcement officer's determination of probable cause when it is backed by the authority of a search warrant.").

The Supreme Court reiterated its favor for search warrants in *Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 expressing the view that " 'in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall.' " *Id.* at 914, 104 S.Ct. at 3416 (quoting *United States v. Ventresca,* 380 U.S. 102, 106, 85 S.Ct. 741, 744, 13 L.Ed.2d 684 (1965)). The basis for the Court's view lies in the realization that "[r]easonable minds *frequently* may differ on the question whether a particular affidavit establishes probable cause...." *Leon,* 468 U.S. at 914, 104 S.Ct. at 3416 (emphasis supplied).

This is such a case. Despite the above-referenced standards, all of which weigh in favor of the warrant procedure followed here, reasonable judges cannot agree on whether the search warrant affidavit in this case satisfies the probable cause requirement. The California state municipal judge found probable cause to exist. The Wyoming district court rejected this finding, reasoning that the circumstances surrounding the stop of Corral and the search of his vehicle did not sufficiently tie into 110 Northstar Drive and consequently did not support the state judge's finding of probable cause to search the premises. Even this panel, with the benefit of further hindsight, cannot agree on whether the affidavit in support of the warrant for Corral's residence satisfies the probable cause requirement. As a result, for purposes of this opinion, we assume, but do not hold, that the district court was correct in finding that the affidavit failed to establish probable cause. We engage in this assumption because we find common ground for reversing the district court on the

932

"good faith exception" to the exclusionary rule. *See United States v. Cook*, 854 F.2d 371, 374 (10th Cir.1988) (applying good faith exception under assumption that affidavit failed to establish probable cause), *cert. denied*, —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 779 (1989).

## VI. THE GOOD–FAITH EXCEPTION TO THE EXCLUSIONARY RULE

The exclusionary rule is a judicially-created remedy rather than a personal constitutional right of the aggrieved individual. *E.g., United States v. Leon*, 468 U.S. at 906, 104 S.Ct. at 3411; *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976). The rule is not intended to protect the truth-finding process of the trial, but is to serve the privacy interests protected by the fourth amendment. *United States v. Payner*, 447 U.S. 727, 734, 100 S.Ct. 2439, 2445, 65 L.Ed.2d 468 (1980); *United States v. Mitchell*, 783 F.2d 971, 978 (10th Cir.), *cert. denied*, 479 U.S. 860, 107 S.Ct. 208, 93 L.Ed.2d 138 (1986).

In *Leon*, the Supreme Court modified the fourth amendment's exclusionary rule to provide that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant. *Leon*, 468 U.S. at 913, 104 S.Ct. at 3415; *United States v. Medlin*, 798 F.2d 407, 409 (10th Cir.1986), *later appeal*, 842 F.2d 1194 (1988); *see generally* 1 W. LaFave & J. Israel, *Criminal Procedure* § 3.1 (1984). The *Leon* Court applied the "good faith" exception to admit the evidence from a search warrant subsequently invalidated by a lack of probable cause. *Leon*, 468 U.S. at 922, 104 S.Ct. at 3420. In *Massachusetts v. Sheppard*, 468 U.S. 981, 988 & n. 5, 104 S.Ct. 3424, 3427 & n. 5, 82 L.Ed.2d 737 (1984), the Court held that the same exception could also be applied to warrants that violate the fourth amendment's particularity requirement.

*Sheppard* involved police officers who obtained incriminating evidence in a search conducted pursuant to a warrant that was later found invalid because it failed to describe with particularity the items to be seized. The Court there declined to exclude the evidence because the officers' good faith efforts to obey the warrant requirement demonstrated that the exclusionary rule's purpose to deter unlawful police conduct had no application in those circumstances. *Id.* at 988 & n. 5, 990, 104 S.Ct. at 3427 & n. 5, 3428. Similarly, in *Leon*, the police obtained a search warrant that ultimately was found to be unsupported by probable cause. The Supreme Court held that the exclusionary rule did not apply because the officers in good faith had done all they could to adhere to the fourth amendment's mandate. 468 U.S. at 926, 104 S.Ct. at 3422.

Of course, *Leon* and *Sheppard* do not mean that evidence obtained under an invalid warrant should never be suppressed. "The Court mandated that the exclusionary rule be invoked only in those 'unusual' cases in which its purpose would be served, i.e., in which it would deter police misconduct." *Medlin*, 798 F.2d at 409.

▬ In determining whether we should apply the exception, the "good-faith inquiry is confined to the objectively ascertainable question of whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922 n. 23, 104 S.Ct. at 3420 n. 23. To answer this "objectively ascertainable question," we are to consider "all of the circumstances," *id.*, and assume that the executing "officers ... have a reasonable knowledge of what the law prohibits." *Id.* at 919 n. 20, 104 S.Ct. at 3419 n. 20, *quoted in, United States v. Leary*, 846 F.2d at 607. We must also review the text of the warrant and the affidavit to ascertain whether the agents might have "reasonably presume[d] it to be valid." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421; *accord Leary*, 846 F.2d at 607. Furthermore, "[t]he government, not the defendant, bears the burden of proving that its agents' reliance upon the warrant was objectively reasonable." *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir. 1986); *accord Leary*, 846 F.2d at 606 n. 26.

■ *Leon* described four scenarios in which the exclusionary rule is still applicable:

(1) the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit (citing *Franks v. Delaware*, 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978));

(2) the magistrate abandoned his judicial role and failed to perform his neutral and detached function (citing *Lo Ji Sales, Inc. v. New York*, 442 U.S. 319 [99 S.Ct. 2319, 60 L.Ed.2d 920] (1979));

(3) the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11 [95 S.Ct. 2254, 2265, 45 L.Ed.2d 416] (1975) (Powell, J., concurring)); or

(4) the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized (citing *Massachusetts v. Sheppard*, 468 U.S. 981 [104 S.Ct. 3424, 82 L.Ed.2d 737] (1984)).

*United States v. Gant*, 759 F.2d 484, 487 (5th Cir.) (parallel citations omitted) (citing *Leon*, 468 U.S. at 923, 104 S.Ct. at 3420), *cert. denied*, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985). Corral contends, and the district court held, that the warrant at issue here falls within the third exception. *Corral*, 702 F.Supp. at 1550. Corral also contends that the first exception applies as well. We treat these issues in reverse order.

A. *Absence of a Deliberately or Recklessly False Affidavit*

■ There is no showing here that the state municipal judge issued the warrant in reliance on a deliberately or recklessly false affidavit. *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667 (1978). Under the Supreme Court's decision in *Franks*, when a defendant makes a substantial preliminary showing that intentionally or recklessly false statements are included in an affidavit supporting a search warrant and that the affidavit without the false statements is insufficient to support a finding of probable cause, the defendant is entitled to a hearing on the matter. *Id.* at 171, 98 S.Ct. at 2684. At the hearing the defendant must establish knowing or reckless falsity by a preponderance of the evidence before he may obtain suppression of the evidence obtained from the search. *Id.* An affiant's negligence or innocent mistake resulting in false statements in the affidavit is not enough to satisfy a defendant's burden. *Id.* at 171, 98 S.Ct. at 2684; *United States v. Orr*, 864 F.2d 1505, 1508 (10th Cir.1988). In the instant case, it is unclear whether Corral even requested a *Franks* hearing before the district court. [See Record, Vol. I at doc. 57, pp. 1–4, Defendant's Proposed Findings of Fact and Conclusions of Law, which lists 27 separate issues arising out of the suppression hearing, none of which pertain to *Franks*]. Although Corral made allegations of false statements at the suppression hearing, the *Franks* issue is mentioned only in the most cursory fashion in the papers before us,[2] and the district court made no *Franks* findings in its suppression order.

■ In finding an absence of probable cause in the affidavit, however, the district court relied heavily on Sergeant Kohler's apparent lack of knowledge that 110 Northstar Drive was Corral's address:

In the affidavit for search warrant, Sgt. Kohler *erroneously* stated that "[a]t the time of his arrest suspect Rene Corral gave his address as 110 Northstar Drive Pittsburg, California." No one now contends that Corral made this statement. At the time the affidavit was filled out, police knew only that 110 Northstar

---

2. See Corral's appeal brief at 39 where he states: Because the instant Affidavit for Search Warrant contained the recklessly false assertion that: "At the time of arrest suspect René Corral gave his address as 110 Northstar Drive Pittsburg California," it was based on a reckless falsehood, and the warrant is invalid

under *Franks v. Delaware*, 438 U.S. 154 [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978). This is the only discussion of *Franks* in the brief filed by Corral. Similarly, the *Franks* decision is discussed nowhere in the government's opening brief or reply brief.

Drive was the address listed on Corral's driver's license.

*Corral*, 702 F.Supp. at 1548 (emphasis added). This "error" does not rise to the level of a deliberate falsehood under *Franks*. Moreover, the district court made no findings that the affidavit information regarding Corral's address was either deliberately or recklessly false. Finally, a careful review of the record reveals that no such findings could be made.

In the context of a *Franks* challenge, the focus is the credibility of the affiant. 438 U.S. at 171, 98 S.Ct. at 2684. Here, Kohler's affidavit clearly indicates that he was not present at the scene of Corral's arrest in Wyoming. Instead, Kohler received the information regarding the Wyoming arrest and the location of Corral's residence from investigator Tony Hinton. [Record, Affidavit at 3–5]. There is nothing in this record to suggest that Kohler deliberately falsified the information he received from Hinton. At best, Corral has shown nothing more than either a miscommunication error by Hinton or an innocent error by Kohler, both of which are insufficient to satisfy his burden under *Franks* and its progeny.[3] *United States v. Page*, 808 F.2d 723, 729 (10th Cir.), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683, *later proceeding*, 828 F.2d 1476, *cert. denied*, 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Carlson*, 697 F.2d 231, 238 (8th Cir.1983).

But whether Corral actually stated his address to authorities as 110 Northstar Drive, or authorities knew only that 110 Northstar Drive was the address listed on his driver's license, is of little significance. Under Section 14600 of the California Vehicle Code, law enforcement officials are entitled to presume that the address listed on the driver's license of a California resident is the individual's residence.[4] Thus, Sergeant Kohler was entitled to presume that 110 Northstar Drive was Corral's residence. That the affidavit in support of the warrant may have incorrectly noted the source of this information is of no consequence. As the Supreme Court explained in *Illinois v. Gates*, 462 U.S. at 235, 103 S.Ct. at 2330: "affidavits 'are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.' " (quoting *Ventresca*, 380 U.S. at 108, 85 S.Ct. at 746); *accord United States v. McCoy*, 781 F.2d 168, 172 (10th Cir.1985) (warrant is not to be read in such a restrictive manner as will discourage officer from seeking warrant before conducting search).

**B.** *The Officers' Reliance on the Magistrate's Issuance of the Warrant Was Objectively Reasonable*

Although Sergeant Kohler's affidavit was not a model of specificity, we do not believe it was so lacking in probable cause as to render official belief in its existence entirely unreasonable. Here, the affidavit supporting the warrant was neither a "bare bones" affidavit, nor was it "devoid" of facts. *Leon*, 468 U.S. at 926,

---

**3.** Corral's other claims of alleged false statements are similarly without merit. They include, for example, alleged misstatements regarding the location of the town of "Aurora", as well as Corral's claim that Kohler falsely identified agent Tony Hinton as a "Deputy Attorney General of Wyoming" rather than an investigator. [See Record, Affidavit at 1; Record, Tr. of Sept. 6, 1988, Suppression Hearing at 171]. The district court made no findings of deliberate falsehood concerning these statements and we see no record basis for such a conclusion now. [See Record, Tr. of Sept. 6, 1988, Suppression Hearing at 277].

**4.** Section 14600 reads:

Change of address

(a) Whenever any person after applying for or receiving a driver's license moves, or acquires a new address different from the address shown in the application or in the license issued to him, he shall within 10 days thereafter notify the department of his old and new address.

(b) The department may thereupon change the address as shown upon the license or application or, should the department for any reason fail to so change the address upon the license, then the licensee shall mark out the former address on the face of the license and type or write the new address in ink on the reverse side of the license with the date and signature of the licensee.

Cal.Veh.Code § 14600 (Deering 1989).

104 S.Ct. at 3422; *United States v. Cook,* 854 F.2d at 373; *United States v. Wright,* 791 F.2d 133, 135 (10th Cir.1986); *United States v. Cardall,* 773 F.2d 1128, 1133 (10th Cir.1985). The search warrant issued in this case was supported by an affidavit which was hurriedly prepared by law enforcement officials in the midst of a rapidly unfolding investigation. *United States v. Ventresca,* 380 U.S. at 108, 85 S.Ct. at 745. The affidavit consisted of the following eight documents, all of which were stapled together:

*Document #1:* A nine-page Pittsburg, California Felony Report authored by Sergeant Kohler. This report outlined the events in Wyoming as relayed to Kohler from one of the Wyoming investigators, Tony Hinton. This report contained the following opinion by Kohler: "Due to the fact that $298,919.00 in U.S. currency was located in the trunk of the vehicle along with four grams of cocaine it is my opinion the currency was the proceeds from the sale of cocaine and remainder of the cocaine was possessed for sale." [Record, Report at 5]. This report also detailed how the officers secured 110 Northstar Drive while the warrant and affidavit were being prepared. [*Id.* at 6–7]. During this waiting period, two persons, Hilario Corral and Cesar Garcia, arrived outside the residence at 110 Northstar Drive. [*Id.* at 8]. Garcia had a brown suitcase with him.[5] Hilario Corral, after being *Mirandized,* agreed to give a written statement. This report references a supplementary report containing Hilario Corral's written statement. [*Id.*].

*Document #2:* A one-page "Admonishment of Rights" form for Hilario Corral. This form sets forth all of the rights discussed in the Supreme Court's *Miranda* decision and bears the initialed waiver and signature of Hilario Corral. *Miranda v. Arizona,* 384 U.S. 436, 467–76, 86 S.Ct. 1602, 1624–28, 16 L.Ed.2d 694 (1966).

**5.** The suitcase was subsequently searched pursuant to warrant and $31,000.00 in U.S. currency was recovered. This search is not before us on appeal.

**6.** Subsequent search of the bag pursuant to a warrant revealed $77,000.00 in United States

*Document #3:* A four-page Pittsburg, California Supplementary Report authored by Detective Elzie. This report reflects that Hilario Corral told Elzie that Hilario was the cousin of defendant René Corral. It further indicates that Hilario Corral claimed that he had nothing to hide, was not involved in any illegal activities, and would consent to the search of his own residence at 2160 Peachtree Circle. The report reflects that upon arrival at 2160 Peachtree Circle, Hilario Corral stated that defendant René Corral had left a bag at Hilario's residence for safekeeping. Hilario Corral denied knowledge of the bag's contents. The bag which Hilario later showed to the officers was a red, white & blue canvas athletic bag. It was completely closed. The officers did not open the bag, but took it to 110 Northstar Drive and began to prepare a warrant request to search the bag along with the residence.[6]

*Document #4:* A two-page handwritten Pittsburgh Police Department statement signed by Hilario Corral. The statement reads as follows:

The above is my true and correct name. This is my statement as told to Det. Elzie.

Today about 12:30 p.m. I got a phone call from Cesar Garcia to give him a ride from the San Francisco Airport at 5:30 p.m. I told him yes since I had to go to San Francisco anyway to pick up a computer from my cousin's house. Cesar is my friend and I have known him for approx. 2 yrs. I arrived late at the Airport due to car trouble but still met Cesar. We then got a burrito to eat and went to my cousin's house to get the computer at approx. 7:00 p.m. After a short stay we then drove on back to Pittsburg to Cesar's house. The police were at the house when we arrived. I'm a computer operator for Bechtel Corp. in San Francisco. *I have no knowledge of narcotics at this house except maybe*

currency. The district court found that Corral lacked standing to contest this search, and it is not before us on appeal. *Corral,* 702 F.Supp. at 1549.

*only party favors but not large amounts for sell that the police are thinking of.* I knew nothing about Cesar's trip only that he needed a ride home from the Airport. I have nothing to hide from the police and they could search my residence for narcotics or contraband if so desired.

This statement was written by Det. George Elzie as told by me. [emphasis supplied].[7]

*Document # 5:* A one-page supplemental statement by Hilario Corral, which reads:

On Thursday 4–14–88 or Friday 4–15–88 my cousin Rene Corral brought a red and blue canvas carry bag to my house to keep for him while he went out of town. Myself nor my wife does not know what's in the bag and have no connections to my cousin. He (my cousin) has never left anything here for us to keep other than a few suits and ties.

Me and my wife both knew the bag was here but not the contents of the bag.

*Document # 6:* A "Consent to Search" form signed by Hilario Corral for his residence at 2160 Peachtree Circle.

*Document # 7:* A three-page document setting forth Sergeant Kohler's training and experience as a thirteen-year veteran of the police force and a four and one-half year veteran of its Narcotics Division,[8] as well as the following pertinent opinion:

Based on the above information, I formed the expert opinion that Cocaine is possessed for sale at 110 North Star Drive Pittsburg, California. Persons who sell Cocaine often keep additional amounts in their home and vehicles, as well as on their persons, for future use and/or sale. Persons who sell Cocaine do not carry their entire supply of Cocaine on their persons because of the ever present danger of being robbed by the persons they sell Cocaine to and because it is common knowledge among narcotic/dangerous drug dealers that the penalty for being arrested for Possession for Sales of larger quantities is usually more severe than Possession only; thus motivating them to carry smaller quantities on their person.

*Document # 8:* An "Affidavit for Search Warrant" form, incorporating the foregoing police reports and records, and containing a description of the residence at 110 Northstar Drive and a description of the items to be searched and seized. The affidavit bears the signature of Sergeant Evan Kohler.

In short, based upon the large amount of cash [9] and small amount of cocaine present in Corral's vehicle in Wyoming, the suspicious conduct and statements of Hilario

---

**7.** In suppressing the evidence, the district court erroneously stated: "Unlike *Cook* and other cases, *no one claims to know of drugs at 110 Northstar Drive,* and no surveillance was conducted there." *Corral,* 702 F.Supp. at 1550. (emphasis supplied). The distribution of cocaine as a "party favor" can constitute a felony violation of 21 U.S.C. § 841. *United States v. Coady,* 809 F.2d 119, 124 (1st Cir.1987) ("An exchange of money is not a required element of [21 U.S.C. § 841(a)(1) ]."); *United States v. Ramirez,* 608 F.2d 1261, 1263–64 (9th Cir.1979) ("[A]lthough apparently no commercial scheme is involved, [the defendants'] sharing the cocaine with Zamora and Leon constitutes 'distribution' for purposes of 21 U.S.C. § 841(a)(1).").

**8.** The affiant's expertise is substantial. The affidavit reflects that Kohler has been involved in over 400 narcotics investigations, and has both authored and executed search warrants on dozens of occasions. He also has worked undercover on more than 150 narcotics purchases and witnessed more than 200 narcotics purchases.

This portion of the affidavit also reflects that Kohler has qualified as an expert witness in numerous drug cases and has received specialized training in narcotics recognition, packaging, use and sales.

**9.** We are not unmindful of the regulation which attends transactions in currency in excess of $10,000.00, *see* 31 U.S.C. § 5313 & 31 C.F.R. § 103.22 (currency transaction report), together with the unusual nature of transporting almost $300,000.00 in cash contained in a suitcase in the trunk of a personal automobile. Unexplained large amounts of currency have been viewed by many courts as evidence of narcotics trafficking. *E.g., United States v. Jabara,* 618 F.2d 1319, 1329 (9th Cir.1980), *cert. denied sub nom.,* 446 U.S. 987, 100 S.Ct. 2973, 64 L.Ed.2d 845 and 449 U.S. 856, 101 S.Ct. 154, 66 L.Ed.2d 70 (1980); *United States v. Magnano,* 543 F.2d 431, 437 (2d Cir.1976), *cert. denied sub nom.,* 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977).

Corral, as well as his knowledge of the nature of drug trafficking, Sergeant Kohler formed the opinion, expressed in his affidavit, that cocaine was possessed for sale at 110 Northstar Drive. [Record, Affidavit at 19].[10] Courts frequently have relied on the expert opinion of officers in determining where contraband might be kept. *United States v. Medlin*, 798 F.2d at 409; *see United States v. Fama*, 758 F.2d 834, 838 (2d Cir.1985) (agent's expert opinion is factor contributing to objective good faith).

Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched. *United States v. McCoy*, 781 F.2d at 172; *see generally*, 1 W. LaFave & J. Israel, *Criminal Procedure* at § 3.3, pp. 214–15 (1984). Here, the state judge spent ninety minutes with Sergeant Kohler before making an informed and deliberate determination of probable cause. Changes were made to the affidavit and additional information provided as a result of the state judge's questioning of Kohler. [See Record, Tr. of Sept. 6, 1988, Suppression Hearing at 271–72, 290]. Upon all the circumstances set forth in the affidavit, the judge concluded that there was a *"fair* probability" that evidence of a crime would be found at 110 Northstar Drive. *Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332 (emphasis added); *accord United States v. Cardall*, 773 F.2d at 1131. We believe both Kohler and the officers who executed the warrant should be entitled to place substantial weight on this finding in defending an attack on their good faith.

This is not the first time that this court has applied the "good faith" exception to a warrant which arguably failed to set forth probable cause. In *United States v. Cook*, 854 F.2d at 372, we assumed, but did not hold, that the affidavit in support of a

search warrant failed to establish probable cause. Nevertheless, we upheld the search and reversed the district court on the ground that "the detective's reliance on the judge's probable cause determination and on the technical sufficiency of the warrant was objectively reasonable." *Id.* at 374. In *Cook*, a "first-time confidential informant" told a detective that he had recently been to an identified apartment at which he has observed Cook in possession of large sums of currency and several "paper decks" of cocaine. The informant told the detective that he had seen Cook there with cocaine several times. A day before the warrant was obtained a police officer had observed substantial foot traffic near that apartment, which, based on the affiant's experience and training, was consistent with drug trafficking. The affiant also learned through investigation that Cook occupied the apartment. Moreover, at the time, Cook was on probation for possession of a controlled substance. Another detective learned that Cook had at least twice been arrested for possession of a controlled substance. These facts were all included in an affidavit for search warrant, which was presented to, and approved by, a state court judge. *Id.*

We acknowledge that *Cook* involved a stronger warrant affidavit than the affidavit in the instant case. Here, there was no confidential informant with information concerning either Corral or 110 Northstar Drive. Similarly, there was no surveillance of 110 Northstar Drive prior to Corral's traffic stop in Wyoming. These factors, of course, are not prerequisites for a finding of probable cause. See Section V above. Moreover, as previously discussed, it is clear that the application for a warrant to search 110 Northstar Drive was supported by much more than a "bare bones" affidavit. *United States v. Leon*, 468 U.S. at

10. We reject the district court's reasoning that because Sergeant Kohler had difficulty at the suppression hearing distinguishing between the affidavit for warrant and actual warrant, his expertise was somehow diminished. *Corral*, 702 F.Supp. at 1547–48. [See Record, Tr. of

Sept. 7, 1988, Suppression Hearing at 320–38]. Such confusion is simply irrelevant to the issue of whether the state judge could find probable cause upon the information contained in the affidavit, as well as to the issue of whether

926, 104 S.Ct. at 3422.[11] While the strength of the affidavit in this case lies somewhere short of the showing which supported our good faith finding in *Cook*, in our view the instant affidavit, taking into account all of the circumstances, is not "*so* lacking in indicia of probable cause as to render official belief in its existence *entirely* unreasonable." *Leon*, 468 U.S. at 923, 104 S.Ct. at 3421 (emphasis supplied) (quoting *Brown v. Illinois*, 422 U.S. 590, 610–11, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part)).[12]

Also cutting in the government's favor on the good-faith issue in this case is the fact that in *Cook*, "[t]he Government's elicitation of facts at the suppression hearing was anemic at best." *Cook*, 854 F.2d at 373. In sharp contrast, the evidentiary record developed in this case was substantial. At the suppression hearing, Kohler was questioned extensively regarding his expertise, the information he received from Wyoming, the reasonableness of the assumptions he made and his conversations with the state municipal judge. [See Record, Tr. of Sept. 6–7, 1988, Suppression Hearing at 250–301 & 312–49]. This record, combined with the facts stated in the affidavit, "demonstrates that a reasonably well-trained law enforcement officer would not have known that the search was illegal [assuming it was] despite the magistrate's authorization, as contemplated in *Leon*, 468 U.S. 897 [104 S.Ct. 3405, 82 L.Ed.2d 677]...." *Cook*, 854 F.2d at 373 (bracketed material in ·original); *accord United States v. Wright*, 791 F.2d at 135.

This is not to say that a judicial official's concurrence in improper activity brings the law enforcement officer's conduct within *Leon* and *Sheppard*. *United States v. Baker*, 894 F.2d 1144, 1149 (10th Cir.1990)

(per curiam). Indeed, a controversy has apparently developed among various courts as to what favorable weight may be given to an officer's reliance on a judicial official's opinion regarding the propriety of a contemplated search. *Compare United States v. Martin*, 833 F.2d 752, 755 (8th Cir.1987) (citing *Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) for the proposition that an officer "may not rely entirely on the magistrate's finding of probable cause") *with Martin* at 756–57 (Lay, C.J., concurring) (disagreeing with "great weight" attached by majority to magistrate's finding that probable cause had been established, and concluding that magistrate's issuance of warrant is "irrelevant to the question of the officer's good faith") *and Martin v. D.C. Metro. Police Dep't*, 812 F.2d 1425, 1434 n. 20 (D.C.Cir.) (magistrate's determination should carry "some weight" in inquiry regarding officer's good faith), *vacated in part, reh'g granted en banc*, 817 F.2d 144, *reinstated, sub nom., reh'g dismissed on reconsideration en banc*, 824 F.2d 1240 (1987).

We cannot speak for other circuits or other cases. Under the circumstances in this case, however, we believe the state judge's probable cause finding is not only a relevant factor, but a significant one as well, in the good-faith equation. As our circuit stated in *United States v. Cardall*, 773 F.2d at 1133 (citations and emphasis omitted):

The first notion to be remembered in considering the good faith principle is the presumption created in *Leon* that when an officer relies upon a warrant, the officer is acting in good faith. While this presumption is not an absolute, it must carry some weight. Second, it must also

---

Kohler was acting in good faith at the time he sought the warrant.

**11.** The Court stated in *Leon,* 468 U.S. at 926, 104 S.Ct. at 3422:

[The] application for a warrant clearly was supported by much more than a "bare bones" affidavit. The affidavit related the results of an extensive investigation and, as the opinions of the divided panel of the Court of Appeals make clear, provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause. Under these circumstances, the officers' reliance on the magistrate's determination of probable cause was objectively reasonable.

**12.** We note that on three occasions the district court erroneously quoted this portion of the Supreme Court's opinion in *Leon* and omitted the word "entirely". 702 F.Supp. at 1549–50. The word "entirely" is not mere verbiage.

be remembered that the knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers.

When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are devoid of factual support, not merely whether the facts they contain are legally sufficient. When a warrant has issued, the legal sufficiency of the underlying affidavit has already been determined by the magistrate, and the magistrate's determination is entitled to credence. Courts cannot make the good faith of an officer turn upon whether his reliance on a warrant was misplaced. It is only when the reliance was wholly unwarranted that good faith is absent.

Here, Sergeant Kohler attempted to act in conformity with the fourth amendment by presenting this "close call" to a neutral and detached judge for review. *Leon,* 468 U.S. at 913–14, 104 S.Ct. at 3415–16; *Aguilar v. Texas,* 378 U.S. 108, 111, 84 S.Ct. 1509, 1512, 12 L.Ed.2d 723 (1964), *overruled on other grounds, Illinois v. Gates,* 462 U.S. at 238, 103 S.Ct. at 2332.[13] The record reveals that Kohler was questioned by an experienced state judge, and that certain changes were made to the affidavit as a result of that questioning. [Record, Tr. of Sept. 6, 1988, Suppression Hearing at 256, 271–72, 290]; *cf. United States v. Rome,* 809 F.2d 665, 668 (10th Cir.1987). In total, the affiant spent over one hour with the state judge reviewing the sufficiency of the warrant. After all of this, the state judge found that the facts established probable cause to issue the search warrant for Corral's residence.

 Just as reviewing courts give "great deference" to the decisions of judicial officers who make probable-cause determinations, police officers should be entitled to rely upon the probable-cause determination of a neutral magistrate when defending an attack on their good faith for either seeking or executing a warrant. This is particularly true, where, as here, with the benefit of hindsight and thoughtful reflection, reviewing judges still cannot agree on the sufficiency of the affidavit. *Martin,* 833 F.2d at 756 ("When judges can look at the same affidavit and come to differing conclusions, a police officer's reliance must, therefore, be reasonable."). In such cases, the good faith principles of *Leon* are triggered and come directly into bearing. *Cook,* 854 F.2d at 372; *United States v. Medlin,* 798 F.2d at 409. As the *Leon* Court stated:

> In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination.... "[O]nce the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law." ... Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Leon,* 468 U.S. at 921, 104 S.Ct. at 3419 (citations omitted). Here, the record establishes that both Kohler and the officers who executed the search of Corral's residence were entitled to rely on the California state judge's determination of probable cause, and this reliance was objectively reasonable. *United States v. Wright,* 791 F.2d at 135.

## VII. CONCLUSION

Perhaps years ago, as suggested by the district court, the distance between Wyoming and Corral's residence in Pittsburg, California, would have precluded a finding of probable cause in this case. But today, the drug trade has taken on not only national, but international dimensions. Drug trafficking pervades all corners of our country. Drug traffickers freely travel our nation's highways in operating their illicit enterprise.

Here, a large amount of United States currency and a small quantity of cocaine had been seized from a suspected drug

---

**13.** Contrary to Corral's suggestion, the record in this case does not reveal that the state judge abandoned his impartial role in granting the warrant. *Cf. United States v. Rome,* 809 F.2d 665, 668 (10th Cir.1987); *Cardall,* 773 F.2d at 1133.

trafficker in Wyoming who was traveling across the country. Suspicious circumstances occurred at his residence in California. After discussions with other law enforcement officers and a brief but intense investigation, a trained narcotics detective attempted to act in conformance with the fourth amendment by presenting the results of his investigation to a neutral judge in the form of an affidavit requesting judicial authorization to search the suspect's house. The state judge carefully considered the matter and issued the warrant, which resulted in the seizure of cocaine, marijuana and firearms. While in hindsight the detective's affidavit arguably fell short of the probable cause mark, it was not so deficient that official belief in its validity was rendered entirely unreasonable. Indeed, we find that the officers' reliance on the state judge's determination of probable cause was objectively reasonable.

This is not one of those "unusual" cases where suppression of the evidence is appropriate to deter government misconduct. With due regard to those cherished rights protected by the fourth amendment, a review of all of the circumstances in this case leads us to find in favor of the compelling "public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." *Alderman v. United States*, 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969), *quoted in, Leon*, 468 U.S. at 900, 104 S.Ct. at 3409. Accordingly, we conclude that the extreme sanction of suppression is inappropriate in this case. REVERSED.