**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 5, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

FRANK L. GUTIERREZ,

　　　Defendant - Appellant.

No. 11-2133
(D.C. No. 2:09-CR-00760-RB-1)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, **HOLMES**, and **MATHESON**, Circuit Judges.

---

After stopping Appellant Frank Gutierrez's car in New Mexico, police seized the vehicle, took it to the station, and searched it pursuant to a warrant. They discovered approximately 70 grams of methamphetamine in the vehicle's trunk. Mr. Gutierrez was later indicted and convicted on one count of possessing with intent to distribute more than 50 grams of methamphetamine.

---

　　　* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Before trial, Mr. Gutierrez unsuccessfully moved to suppress the

methamphetamine evidence, arguing that the search of his vehicle violated his Fourth

Amendment right against unreasonable search and seizure.  He appeals.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I.   BACKGROUND

### A.  *Factual History*

#### 1.  *The Stop*

Around 3 a.m. on November 12, 2008, Sergeant Arthur De La Garza observed a

tan Honda Accord with its tires riding the shoulder line of Interstate 10 near Lordsburg,

New Mexico.  Sergeant De La Garza, an officer with the Lordsburg Police Department,

initiated a stop of the vehicle.

He approached the passenger side and asked the driver, Mr. Gutierrez, for his

license, insurance, and registration.  As Mr. Gutierrez produced the documents, Sergeant

De La Garza noticed that Mr. Gutierrez's hands were noticeably shaking and that he

appeared nervous and agitated.  Mr. Gutierrez complained that he had been pulled over

multiple times while traveling near Lordsburg.

Brisa Martinez was in the passenger seat.  Sergeant De La Garza noticed her eyes

were droopy and glossy and that she was lethargic.  Based on his training and experience,

he suspected Ms. Martinez was under the influence of narcotics.

Sergeant De La Garza asked Mr. Gutierrez to accompany him to the police cruiser,

where a citation was prepared.  Mr. Gutierrez explained he was driving from Tucson,

Arizona.  Lordsburg, the location of the stop, is on Interstate 10 approximately two hours east of Tucson.

Mr. Gutierrez stated he had driven to Tucson to see a friend, but he hesitated when asked his friend's name.  Mr. Gutierrez said his friend's name was "Ketcho," but Sergeant De La Garza also heard him say "Cowboy."  Mr. Gutierrez explained he had visited his friend for a couple of hours and that he had driven through Lordsburg just three to four hours earlier.

Sergeant De La Garza found Mr. Gutierrez's story confusing.  Although it may have been common for people in the Lordsburg area to travel to Tucson for day trips, he thought it was uncommon for people to take quick trips late at night.  And because Tucson is located two hours from Lordsburg, Sergeant De La Garza determined that Mr. Gutierrez would have spent a very short amount of time in Tucson if it were true that he had driven through Lordsburg three to four hours earlier.  Sergeant De La Garza also knew Tucson to be a source city for the purchase of narcotics.

After checking the VIN on the Honda, Sergeant De La Garza asked Ms. Martinez about the trip to Tucson.  She gave inconsistent information on how long the two had been there, at first saying she was not sure, then saying it had been one hour, and finally stating they had been in Tucson all day.  Ms. Martinez's estimate of when they had left Tucson also differed from Mr. Gutierrez's.  Sergeant De La Garza noticed that she avoided eye contact, continued to appear lethargic, and seemed evasive.

Sergeant De La Garza issued Mr. Gutierrez a citation, said he was "good to go," and then told Mr. Gutierrez that he had some questions. ROA, Vol. I at 293. He told Mr. Gutierrez that he was suspicious about what had transpired during the stop and requested to search the vehicle.

Mr. Gutierrez originally stated, "You can search it; you can bring the dog if you want to." *Id.* at 293-92. Based on this statement, Sergeant De La Garza believed he had Mr. Gutierrez's consent to search the vehicle. Later, Mr. Gutierrez clarified that he would only allow a police dog to sniff the vehicle. Sergeant De La Garza suspected that Mr. Gutierrez revised the scope of his consent after overhearing a radio dispatch that no canines were available.

Sergeant De La Garza then approached Ms. Martinez a second time. He observed that she was lethargic and mumbling, and he believed she was still under the influence of narcotics. Ms. Martinez could not recall when she and Mr. Gutierrez had left Deming, New Mexico, to begin the trip or when they had left Tucson. Sergeant De La Garza suspected her answers were designed to avoid differences with Mr. Gutierrez's responses. Sergeant De La Garza then learned from dispatch that Ms. Martinez had a warrant for her arrest in another county. Because he did not know whether the warrant was extraditable, he did not arrest Ms. Martinez.

Sergeant De La Garza then contacted his brother, Agent Luke De La Garza of the Border Operations Task Force, and asked whether he had information about Mr. Gutierrez. Luke De La Garza contacted a Deming-area undercover narcotics agent with

-4-

the Border Operations Task Force. The undercover agent relayed that Mr. Gutierrez was "moving" methamphetamine in the Deming area. ROA, Vol. III at 90.

After learning this information, Sergeant De La Garza told Mr. Gutierrez he was free to go but that his vehicle was being seized. A tow truck took the vehicle to the Lordsburg Police Department. Police took Mr. Gutierrez and Ms. Martinez to a nearby truck stop.

### 2. *The Search Warrant*

At 7:30 a.m., Sergeant De La Garza and his brother faxed a search warrant application to a state district court judge. The judge asked the officers questions about the traffic stop and requested changes to Sergeant De La Garza's affidavit. At 8:11 a.m., the officers faxed to the judge a revised affidavit, and the search warrant was approved.

Sergeant De La Garza's affidavit in support of the warrant relates the following relevant facts:

1. On November 12, 2008, Sergeant De La Garza stopped Mr. Gutierrez's vehicle on Interstate 10 after observing that it did not maintain its lane of travel.

2. Mr. Gutierrez complained of being pulled over on four occasions in the Lordsburg area.

3. Mr. Gutierrez appeared to be "extremely nervous," and his "hands were shaking profusely as he handed [Sergeant] De La Garza his documents."

-5-

4. Mr. Gutierrez stated he was coming from Tucson. He was in Tucson "for only a couple of hours" to visit a friend and was "hesitant of knowing his friend['s] name," responding that it was Ketcho but then saying Cowboy.[1]

5. Ms. Martinez, the passenger, "was very lethargic" and had "droopy and glossy" eyes.

6. Ms. Martinez said they had been in Tucson all day, not just two or three hours.

7. Lordsburg is on a pipeline for narcotics transported to and from Tucson.

8. Sergeant De La Garza believed it reasonable to request a search of the vehicle based on Mr. Gutierrez's "evasive and nervous behavior," the couple's inconsistent stories, and the fact that they were "returning from . . . a known path where narcotics are being distributed to and from."

9. Mr. Gutierrez initially consented to a search of his vehicle "but then recanted and said he would only allow a canine to sniff the outside of his vehicle."

ROA, Vol. I at 53-54.

Sergeant De La Garza and other officers executed the search warrant. During the search, Sergeant De La Garza found a coffee canister in the vehicle's trunk containing approximately 70 grams of methamphetamine.

B. *Procedural History*

On March 26, 2009, Mr. Gutierrez was indicted on a single count of possessing with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Before trial, Mr. Gutierrez filed two motions to suppress the physical evidence seized from his vehicle. Among other challenges, he argued that

---

[1] In the recording of the stop, it appears that Mr. Gutierrez stated that his friend's name is "Ketcho," who is a cowboy in Tucson for a rodeo. In the recording, however, Mr. Gutierrez did hesitate when asked his friend's name.

Sergeant De La Garza's affidavit supporting the search warrant failed to establish probable cause. He also asserted that the evidence was not admissible under *United States v. Leon*, 468 U.S. 897 (1984), because officers could not have relied on the warrant in objective good faith.

After conducting an evidentiary hearing, the federal district court denied Mr. Gutierrez's motions to suppress. The court ruled that (1) Sergeant De La Garza had probable cause to seize Mr. Gutierrez's vehicle and await a search warrant, and (2) the evidence was admissible under *Leon* because the officers conducting the search could have relied in objective good faith on the warrant.

After a one-day trial, a jury found Mr. Gutierrez guilty on the methamphetamine charge. The district court sentenced him to 20 years in prison. Mr. Gutierrez filed a timely appeal.

## II. DISCUSSION

Mr. Gutierrez appeals from the district court's order denying his motions to suppress. He does not challenge the legality of the vehicle stop or Sergeant De La Garza's questioning during the stop. Nor does Mr. Gutierrez challenge that probable cause existed to seize his vehicle. His appeal is limited to whether the warrant-based search of his vehicle violated his Fourth Amendment right against unreasonable search and seizure. He argues that Sergeant De La Garza's affidavit in support of the search warrant lacks probable cause and that officers executing the warrant could not have relied on it in objective good faith.

We review the district court's application of the *Leon* good-faith exception de novo. *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000). "In reviewing the denial of a motion to suppress, this court views the evidence in the light most favorable to the government and upholds the district court's factual findings unless clearly erroneous." *Id.* As explained below, we conclude that the evidence seized from Mr. Gutierrez's vehicle was admissible at trial because officers conducting the search could have relied in objective good faith on the search warrant.[2]

## A. *The Good-Faith Exception*

To be valid under the Fourth Amendment, "[a] search warrant must be supported by probable cause, requiring more than mere suspicion but less evidence than is necessary to convict." *Id.* (quotations omitted). Before approving a warrant, the issuing judge "must examine the totality of the circumstances," as set forth in the supporting documents, and determine whether there are "facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *Id.* at 1006.

If a search warrant is later found to lack probable cause, evidence seized pursuant to the warrant "does not necessarily have to be suppressed." *United States v. Riccardi*,

---

[2] As an alternative basis for affirmance, the Government argues that Sergeant De La Garza had probable cause to search the vehicle on the roadside, which also justified a search at the police station regardless of whether he obtained a warrant. Because we affirm the district court's good-faith ruling, we need not reach this alternative ground.

405 F.3d 852, 863 (10th Cir. 2005). "Ordinarily, courts will remedy a Fourth Amendment violation by invoking the exclusionary rule to exclude the Government's introduction of the unlawfully seized evidence as direct evidence against the defendant in a criminal prosecution." *United States v. Herrera*, 444 F.3d 1238, 1248 (10th Cir. 2006). But in *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court established that "[w]hen police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant." *Herring v. United States*, 555 U.S. 135, 142 (2009) (quoting *Leon*, 468 U.S. at 922). *Leon*'s holding has become known as the "good-faith exception" to the exclusionary rule. *See id.* (noting that in *Leon* the Court "(perhaps confusingly) called . . . objectively reasonable reliance 'good faith'"); *Herrera*, 444 F.3d at 1249.

*Leon*'s good-faith exception does not apply in every instance where police execute a search warrant. *See Danhauer*, 229 F.3d at 1007 (describing *Leon*'s "four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued"). For instance, it does not apply if the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (quotations omitted). The burden is on the government to show that its officers' reliance upon a warrant was objectively reasonable. *United States v. Corral-Corral*, 899 F.2d 927, 932 (10th Cir. 1990).

"When we consider whether the officer relied in good faith upon a warrant, we must look to the underlying documents to see whether they are *devoid* of factual support, not merely whether the facts they contain are legally sufficient." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985); *see United States v. Roach*, 582 F.3d 1192, 1204 (10th Cir. 2009); *United States v. Gonzales*, 399 F.3d 1225, 1230 (10th Cir. 2005). A "'bare bones' affidavit" may be so lacking in probable cause that an officer could not reasonably rely upon it. *Corral-Corral*, 899 F.2d at 934 (quoting *Leon*, 468 U.S. at 926). But the affidavit does not have to be a "model of specificity." *See id.* "An affidavit has enough factual support to justify reliance if it establishes a *minimally sufficient nexus* between the illegal activity and the place to be searched." *United States v. Henderson*, 595 F.3d 1198, 1202 (10th Cir. 2010) (emphasis added) (quotations omitted).

Our analysis of objective reasonableness presumes that the officer has "a reasonable knowledge of what the law prohibits," *Leon*, 468 U.S. at 919 n.20, and we consider "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Id.* at 922 n.23. But "officers are generally not required to second-guess the magistrate's decision in granting a warrant," which is "entitled to great deference." *Gonzales*, 399 F.3d at 1228-29. "[T]he knowledge and understanding of law enforcement officers and their appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *Cardall*, 773 F.2d at 1133.

**B.** *Sergeant De La Garza's Affidavit*

Mr. Gutierrez argues that *Leon*'s good-faith exception does not apply because Sergeant De La Garza's affidavit is so lacking in indicia of probable cause that reliance on it was entirely unreasonable. He contends that the district court's good-faith ruling improperly considered facts that are not contained in the affidavit. The Government responds that the methamphetamine evidence was admissible under *Leon* because Sergeant De La Garza's affidavit contains facts that form "a minimally sufficient nexus between the suspected illegal activity of possessing and transporting narcotics and [Mr.] Gutierrez's car." Aplee. Br. at 17.[3]

We conclude that the *Leon* good-faith exception applies because it was objectively reasonable for officers conducting the search of Mr. Gutierrez's vehicle to rely on the warrant. In this case, the supporting affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," *Leon*, 468 U.S. at 923 (quotations omitted).

Sergeant De La Garza's affidavit is not bare bones or devoid of facts in support of probable cause. *See Corral-Corral*, 899 F.2d at 934. For example, the affidavit states

---

[3] The Government acknowledges that the district court's *Leon* analysis considered some facts outside the affidavit. It urges this court to join those circuits that allow courts conducting a good-faith analysis to consider uncontroverted facts known to officers but inadvertently omitted from the supporting affidavit. *See, e.g.*, *United States v. McKenzie-Gude*, 671 F.3d 452, 460 (4th Cir. 2011); *United States v. Martin*, 297 F.3d 1308, 1318-19 (11th Cir. 2002). Because we affirm the district court's decision based solely on the facts contained in Sergeant De La Garza's affidavit, we need not decide whether courts may consider uncontroverted facts outside the affidavit.

that Mr. Gutierrez was "extremely nervous," his hands were "shaking profusely," and he exhibited "evasive" behavior. ROA, Vol. I at 53-54. This court has explained that "extraordinary and prolonged nervousness can weigh significantly in the assessment of probable cause or reasonable suspicion." *United States v. Ledesma*, 447 F.3d 1307, 1318 (10th Cir. 2006) (quotations omitted); *see also United States v. West*, 219 F.3d 1171, 1179 (10th Cir. 2000) ("Although normal nervousness exhibited by those stopped for a traffic citation is usually entitled to limited significance in the probable cause analysis, in this case it is entitled to somewhat more weight because of the extreme and continued nervousness exhibited by [the defendant].").

The affidavit also recounts that Mr. Gutierrez and Ms. Martinez gave inconsistent travel descriptions. Mr. Gutierrez stated they had been in Tucson for a couple of hours, but Ms. Martinez said they had been in Tucson all day. Mr. Gutierrez also hesitated in stating the name of the friend he had allegedly visited just hours earlier. Inconsistent and vague travel descriptions are proper considerations in the probable-cause determination. *See Ledesma*, 447 F.3d at 1318; *United States v. Ozbirn*, 189 F.3d 1194, 1200 (10th Cir. 1999); *United States v. Arango*, 912 F.2d 441, 447 (10th Cir. 1990).

The affidavit further states that Ms. Martinez was "very lethargic" and that her eyes were "droopy and glossy." ROA, Vol. I at 53. Mr. Gutierrez argues that this description does not mention that Ms. Martinez appeared to be under the influence of narcotics. He is correct that Sergeant De La Garza could have stated more clearly that, in his training and experience, Ms. Martinez appeared to be under the influence of narcotics.

-12-

But the affidavit also mentions twice that Ms. Martinez and Mr. Gutierrez were traveling on a route known for narcotics transportation. In the context of this information, a reasonably well-trained officer could infer that Ms. Martinez's appearance and behavior suggested she was under the influence of narcotics, constituting further indicia of probable cause. *Cf. United States v. Rowland*, 145 F.3d 1194, 1205 (10th Cir. 1998) ("In making the probable cause determination, the issuing magistrate may draw reasonable inferences from the material provided in the warrant application.").

Finally, as noted above, the affidavit indicates that Lordsburg is on a pipeline for narcotics distribution and that Mr. Gutierrez was "returning from [Tucson] . . . a known path where narcotics are being distributed to and from." ROA, Vol. I at 54. The relevance of this information to the probable cause determination may be minimal. *See United States v. White*, 584 F.3d 935, 951-52 (10th Cir. 2009) ("Because law enforcement officers have offered countless cities as drug source cities and countless others as distribution cities, . . . the probativeness of a particular defendant's route is minimal."); *United States v. Williams*, 271 F.3d 1262, 1270 (10th Cir. 2001) ("Standing alone, a vehicle that hails from a purported known drug source area is, at best, a weak factor in finding suspicion of criminal activity."). But it is objectively reasonable for an officer to place some reliance on this fact as relevant to probable cause. Although a route's designation as a "pipeline" for narcotics may not by itself indicate criminal activity, it is at least one consideration in the totality of the circumstances supporting probable cause.

We conclude that Sergeant De La Garza's affidavit is not so lacking in indicia of probable cause as to render reliance on the warrant entirely unreasonable. Sergeant De La Garza may have omitted from the affidavit facts made known to him during the stop that would have provided further indicia of probable cause. But the affidavit contains information that provides a minimal nexus between the suspected illegal activity (transporting narcotics) and the place to be searched (Mr. Gutierrez's vehicle). Given the facts in the affidavit, a reasonably well-trained officer would be entitled to rely on the warrant and would not be required to second-guess the issuing judge's probable cause determination.

### III.  CONCLUSION

For the foregoing reasons, we affirm the district court's denial of Mr. Gutierrez's motions to suppress.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge