**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 30, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ORLANDO REED,

    Defendant - Appellant.

No. 05-5226
(N. D. Oklahoma)
(D.Ct. No. CR-05-60-TCK)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Orlando Reed appeals from the district court's denial of his motion to dismiss the second superseding indictment because it was not signed by the grand jury foreperson and the foreperson's name does not appear on it. He also

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

challenges the district court's denial of his motion to suppress evidence. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

On January 13, 2005, Officer Pat Dunlap, a twenty-two-year veteran of the City of Tulsa Police Department and a nine-year veteran of its Special Investigations Division, went to a Federal Express facility in Tulsa, Oklahoma, to examine the exterior of incoming packages for evidence of criminal courier activity.[1]  While there, he intercepted a Federal Express envelope sent from "Robert Jones" in California, a known drug source state, to "Orlando Reed" in Tulsa, Oklahoma.  Dunlap knew Jones and Reed were career criminals in Tulsa. He was also aware Reed had a criminal history involving drugs, forgery and fraud; in particular, he knew Reed had been convicted in 1998 for credit card offenses.  The envelope also had other characteristics Dunlap looked for when examining packages for evidence of criminal courier activity:  the envelope was from a person to a person, it had a handwritten label, its shipping charge was paid with cash and it was sent priority overnight.

Based on these factors, Dunlap took the envelope into custody and subjected it to a canine sniff.  His drug dog ("Duc"), who is trained to detect marijuana, cocaine, methamphetamine and heroin, did not alert.  Nevertheless,

---

[1] Dunlap has Federal Express's permission to examine packages and regularly does so.

Dunlap retained custody of the envelope while he sought a warrant to search its contents. In his affidavit in support of the warrant, Dunlap explained his experience as a police officer as well as his training and experience in narcotics identification, investigation and interdiction.[2] He also stated the following:

> On 1-13-05 at 0700 hours your Affiant arrived at Federal Express located at 1510 South Memorial Drive. Your Affiant has permission from Federal Express and routinely look[s] over packages at [] Federal Express locations.
>
> On 1-13-05 your Affiant found a Federal Express envelope with several criminal courier characteristics. The envelope was from a Robert Jones; 126 N. Riley Ave.; Marina Del Rey, CA. 90292. The recipient of the package is an Orlando Reed; 8926 East 17[th] Place, Tulsa, OK. 74112. Your Affiant states that the envelope was sent priority overnight and the shipping charge ($20.25) was paid with cash. From your Affiant's training and experience drug traffickers often send controlled drugs, stolen property, counterfeit credit cards and other contraband through the mail using standard or priority overnight service and pay with cash.
>
> Your Affiant states that the airbill was hand written from a person to a person. From your Affiant[']s training and experience packages containing controlled drugs or contraband often have the airbill written out by hand and are to a person.
>
> Your Affiant also states that the package was sent from the State of California. Your Affiant states that on 4-16-04 he intercepted a Federal Express package from California with similar criminal courier characteristics that resulted in the seizure of six counterfeit credit cards and one arrest.
>
> On 4-16-04 your Affiant ran his K-9 partner "Duc" over the package.

_____

[2] Dunlap had received training in narcotics identification and investigation at the Tulsa Police Academy and had successfully completed two Sky-Narc and three A-One schools that focused on drug interdiction via mail, bus and air.

> Duc is a drug detector dog trained to alert to marijuana, cocaine, methamphetamine and heroin.  Your Affiant states that Duc did not alert to an odor of a con[t]rolled drug in the package[.]
>
> Your Affiant states that the recipient of the package is Orlando Reed.  Mr. Reed is a career criminal and has been arrested for robbery, assault, larceny, stolen vehicle, and dangerous drugs.  Your Affiant further states that Orlando Reed had been arrested five times for forgery and eight times for fraud.
>
> Your Affiant states that from past experience packages with the same criminal courier characteristics as drug packages have contained stolen property, counterfeit credit cards, counterfeit identification, LSD, prescri[p]tion medicine, mushrooms and steroids.

(Appellee's App. of Exs. at 5.)

Based on this affidavit alone, Dunlap obtained a search warrant and opened the Federal Express envelope.  Inside he discovered a sealed white envelope with "Orlando Reed" on it.  The white envelope contained five credit cards bearing the name "James Carter."  Believing the cards were counterfeit, Dunlap took them to the United States Secret Service, which verified Dunlap's suspicions.  While the cards contained valid account numbers, the accounts did not belong to either Reed or James Carter.  Dunlap repackaged the cards into the Federal Express envelope and, posing as a Federal Express employee, delivered the envelope to the 8926 East 17th Place address.  Reed's sister accepted delivery of the envelope and took it inside the residence.

In the meantime, Dunlap had obtained an anticipatory search warrant allowing him to search the residence if the Federal Express envelope was

accepted and taken into the residence upon its delivery. Once the envelope had been delivered and accepted, Dunlap executed the anticipatory search warrant. He discovered the Federal Express envelope with the counterfeit credit cards in the southwest bedroom of the residence. He also found a wallet lying on the bed in that bedroom. The wallet contained Reed's Oklahoma driver's license, a Texas driver's license with Reed's picture but the name "James Carter" on it, and five other credit cards suspected to be counterfeit. Dunlap also found mail addressed to Orlando Reed, including a Tenth Circuit opinion affirming his revocation conviction in 2000.

On April 6, 2005, Orlando Reed was indicted with one count of use of a counterfeit access device with the intent to defraud (Count 1). This offense was based on his use of four of the counterfeit credit cards found in his wallet. He had used these cards to purchase items totaling $12,036.12 from various merchants. On May 4, 2005, the government filed a superseding indictment which added an aggravated identity theft count (Count 2). On June 9, 2005, the government filed a second superseding indictment which added a third count, mail fraud, based on Reed's use of a common carrier (Federal Express) to obtain five counterfeit credit cards with the intent to use the cards to make fraudulent purchases (Count 3).

On June 14, 2005, Reed filed a motion to dismiss the second superseding indictment because it was not signed by the jury foreperson and the foreperson's

name does not appear on it. Three days later, he filed a motion to suppress, arguing the search warrant for the Federal Express envelope was invalid because it was not supported by probable cause. Because the search warrant for his residence was issued based on the evidence illegally seized from the Federal Express envelope, he claimed the anticipatory search warrant was also invalid. Thus, he argued the five credit cards seized from the Federal Express envelope, as well as the evidence seized from his residence, should be suppressed.

On August 4, 2005, the district court held an evidentiary hearing on these motions. At that hearing, the district court denied Reed's motion to dismiss. It explained that pursuant to the Judicial Conference of the United States and the E-Government Act of 2002, documents containing identifying information about jurors or potential jurors are not included in the public case file. However, the court informed Reed an original second superseding indictment manually signed by the grand jury foreperson was retained under seal in the clerk's office. The court stated that if Reed wished to see the original second superseding indictment, it would order that a copy be provided to him or make the original indictment available for viewing at the clerk's office. After hearing testimony from Dunlap, the court also denied Reed's motion to suppress. While the court found the search warrant for the Federal Express package was not supported by probable cause, it concluded Dunlap relied on the search warrant in good faith and therefore suppressing the evidence would not further the purpose of the

exclusionary rule.

On August 17, 2005, Reed entered a conditional guilty plea to Counts 1 and 3 of the second superseding indictment, reserving the right to appeal the denials of his motion to dismiss and motion to suppress.[3] On November 15, 2005, Reed was sentenced to twenty-four months imprisonment on each count, to run concurrently. This timely appeal followed.

## II. Discussion

Reed challenges the district court's denials of his motion to dismiss and motion to suppress. Because he claims the absence of the grand jury foreperson's signature or name on the second superseding indictment deprived the district court of jurisdiction over this case, we begin our discussion with the district court's denial of Reed's motion to dismiss.

### A. Motion to Dismiss

The original second superseding indictment was signed by the prosecutor and jury foreperson and placed under seal. The copy of the indictment placed in the public file, however, bears only the prosecutor's signature. In the space designated for the grand jury foreperson's signature, the following notation appears: "S/Grand Jury Foreperson." (R. Vol. I, Doc. 8 at 6.) Reed contends the

---

[3] At the change of plea hearing, Reed testified he purchased the counterfeit credit cards found in his wallet from Michael Campbell in California for $2,500. He also purchased the five counterfeit credit cards found in the Federal Express envelope from Michael Campbell. The sender's name on the envelope ("Robert Jones") was fictitious.

lack of the foreperson's signature or name on the public copy violates Rule 6(c) of the Federal Rules of Criminal Procedure and his Sixth Amendment right to a public trial and renders the indictment a nullity depriving the district court of jurisdiction over his prosecution. While it is laudable that the government wants to protect the identities of grand jurors, Reed asserts their identities need to be made public because the grand jury serves as a buffer against overzealous prosecutors.[4]

Rule 6(c) of the Federal Rules of Criminal Procedure states:

> (**c) Foreperson and Deputy Foreperson**. The court will appoint one juror as the foreperson and another as the deputy foreperson. In the foreperson's absence, the deputy foreperson will act as the foreperson. The foreperson may administer oaths and affirmations and will sign all indictments. The foreperson--or another juror designated by the foreperson--will record the number of jurors concurring in every indictment and will file the record with the clerk, but the record may not be made public unless the court so orders.

Rule 6(c) was not violated in this case because the original second superseding indictment was signed by the grand jury foreperson. Rule 6(c) does not require the foreperson's signature or identity to appear in the public file. Additionally, "[a]s Rule 6(c) illustrates, the responsibilities of a federal grand jury foreman are essentially clerical in nature: administering oaths, maintaining records, and

---

[4] Reed also argues that because the grand jury meets in secret, there is no way of knowing the indictment was presented to the grand jury and voted on without the foreperson's signature. This concern is not implicated here because the original indictment is signed by the foreperson, albeit under seal.

-8-

signing indictments." *Hobby v. United States*, 468 U.S. 339, 344-45 (1984). "[T]he foreman's duty to sign the indictment is a formality[;] the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the indictment. *Id.* at 345 (citing *Frisbie v. United States*, 157 U.S. 160, 163-165 (1895) (while having the foreperson sign the indictment is the preferred practice, because the grand jury returns into court the charges it has approved, the lack of the foreperson's signature is not fatal)).

Nor does the fact the grand jury foreperson's identity is not made public violate the Sixth Amendment right to a public trial. The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . . and to be informed of the nature and cause of the accusation." U.S. CONST. amend. VI. The second superseding indictment informed Reed of the nature and cause of the charges against him. These charges appear in the public file. While the Sixth Amendment right to a public trial has been extended outside the actual presentation of evidence at trial, *see, e.g.*, *Waller v. Georgia*, 467 U.S. 39, 47 (1984) (pretrial suppression hearing); *Press-Enter. Co. v. Superior Court of Cal., Riverside County*, 464 U.S. 501, 505-08 (1984) (voir dire proceedings), we have uncovered no cases, and Reed cites to none, in which the Sixth Amendment right to a public trial has been extended to require the grand jury foreperson's identity or signature be made public. The district court properly denied Reed's motion to dismiss.

B.  Motion to Suppress

Reed argues the district court erred in denying his motion to suppress. While he agrees with the district court that the search warrant for the Federal Express envelope violated the Fourth Amendment because it was not supported by probable cause, he claims it erred in applying the good-faith exception to the exclusionary rule.  Given the deference afforded to a magistrate's determination of probable cause, the government claims there was substantial evidence supporting the state court judge's decision to issue a warrant for the envelope.  In the alternative, it argues the evidence obtained as a result of the warrant should not be excluded because Officer Dunlap acted in good faith reliance on it.

"In reviewing the denial of a motion to suppress, we accept the factual findings of the district court unless they are clearly erroneous."  *United States v. West*, 219 F.3d 1171, 1176 (10th Cir. 2000).  In conducting our review, we consider the evidence in the light most favorable to the government.  *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000).  "However, we review *de novo* the ultimate determination of the reasonableness of the search under the Fourth Amendment."  *United States v. Bustillos-Munoz*, 235 F.3d 505, 511 (10th Cir. 2000).  The applicability of the good-faith exception to the exclusionary rule is also reviewed de novo.  *United States v. Nolan*, 199 F.3d 1180, 1184 (10th Cir. 1999).

"The question whether the exclusionary rule's remedy is appropriate in a

particular context has long been regarded as an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Arizona v. Evans*, 514 U.S. 1, 10 (1995) (quotations omitted). Thus, we can, and often do, turn directly to whether the good-faith exception to the exclusionary rule applies without first considering the validity of the warrant under the Fourth Amendment. *United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993); *see also, e.g., Nolan*, 199 F.3d at 1184; *United States v. Corral-Corral*, 899 F.2d 927, 931-32 (10th Cir. 1990). However, this is not an appropriate case to do so. Important Fourth Amendment issues are present and resolution of them is necessary to guide future action by law enforcement officers and magistrates. *United States v. Leon*, 468 U.S. 897, 925 (1984); *United States v. Rowland*, 145 F.3d 1194, 1206 n.8 (10th Cir. 1998). Additionally, resolution of the Fourth Amendment issues assists our analysis of whether Officer Dunlap's reliance on the warrant was reasonable for purposes of the good-faith analysis. *Id.* Therefore, we will first address the validity of the search warrant.

1. *Validity of Search Warrant*

The Fourth Amendment requires search warrants to be supported by probable cause. U.S. CONST. amend. IV. Probable cause to search exists "when the facts . . . would [lead] a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched." *United States v. Harris*, 369 F.3d 1157, 1165 (10th Cir. 2004) (quotations omitted), *cert. denied*, 543 U.S. 915

-11-

(2004). It requires "more than mere suspicion but less evidence than is necessary to convict." *Danhauer*, 229 F.3d at 1005 (quotations omitted). It also "undoubtedly requires a nexus between suspected criminal activity and the place to be searched." *Id.* at 1006 (quotations omitted). However, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quotations omitted).

"An affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity." *Danhauer*, 229 F.3d at 1006. "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238 (quotations omitted); *see also United States v. Glover*, 104 F.3d 1570, 1578 (10th Cir. 1997) (in determining whether an affidavit supports a finding of probable cause, we review the affidavit as a whole and look to the totality of the information contained therein). In making such determination, the magistrate "may draw reasonable inferences from the material provided in the warrant application." *Rowland*, 145 F.3d at 1205.

A reviewing court should accord great deference to a magistrate's determination of probable cause; its duty is "simply to ensure that the magistrate

had a substantial basis for . . . conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 236, 238-39 (quotations omitted). This deference is appropriate to further the Fourth Amendment's strong preference for warrants. *Massachusetts v. Upton*, 466 U.S. 727, 733 (1984); *see also United States v. Ventresca*, 380 U.S. 102, 105-06 (1965) ("An evaluation of the constitutionality of a search warrant should begin with the rule that the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of office[r]s . . . .") (quotations omitted). Because of this strong preference for warrants, "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." *Ventresca*, 380 U.S. at 106.

The deference accorded a magistrate's probable cause determination, however, is not boundless. *Leon*, 468 U.S. at 914. We will not defer to a magistrate judge's probable cause determination where there is no substantial basis for concluding that the affidavit in support of the warrant established probable cause. *Id.* at 915; *Danhauer*, 229 F.3d at 1006. Specifically, we will not defer to a magistrate's probable cause determination if it is a mere ratification of the bare conclusions or "hunches" of others or where it involves an improper analysis of the totality of the circumstances. *Leon*, 468 U.S. at 915; *Upton*, 466 U.S. at 734; *Gates*, 462 U.S. at 239.

Officer Dunlap's affidavit provided the state court with the following facts in support of probable cause: (1) the package was sent priority overnight, (2) it

-13-

was sent from a person to a person, (3) the shipping charge was paid in cash, (4) the airbill was handwritten, (5) the package was sent from California, (6) Officer Dunlap intercepted a previous package containing these same characteristics on April 16, 2004, which resulted in the seizure of six counterfeit credit cards and one arrest, (7) Dunlap's drug dog did not alert to the April 16, 2004 package, (8) the recipient of the package (Reed) was a known career criminal, whose previous arrests included robbery, assault, larceny, stolen vehicle, dangerous drugs, forgery and fraud, and (9) Dunlap's past experience demonstrated that packages with the same criminal courier characteristics have contained illegal items and/or drugs.[5] We agree with the district court that the above facts, taken in their totality, do not establish probable cause.

The first four factors are insufficient to establish probable cause. As the district court noted, the purpose of Federal Express is to ensure quick delivery of a package, including overnight service. The fact the shipping charge was paid in cash is not extraordinary, especially considering its amount.[6] While Officer

_____

[5] At the motion to suppress hearing, Dunlap testified he knew the package's sender (Robert Jones) was a career criminal at the time he intercepted the package. However, he failed to include this fact in his affidavit. He stated California was a drug source state but this fact was also omitted from the affidavit. He further testified that he was aware at the time he sought the search warrant that Reed had been convicted in 1998 for credit card offenses. Nevertheless, he refers solely to Reed's past arrests in the affidavit. Reed has not alleged these omissions render the warrant defective.

[6] The box "cash/check" was marked on the Federal Express envelope. (Appellee's Add. of Exs. at 2.) In his affidavit, Dunlap stated the shipping charge had been paid in cash. At the motion to suppress hearing, Dunlap testified he believed the shipping charge

Dunlap testified only three to four percent of all airbills he sees are handwritten, the fact one is handwritten does not demonstrate a fair probability that the package bearing that airbill contains contraband. As the district court stated: "[W]e all have experience with a lot of handwritten FedEx. If you're in a hurry, that's what you do." (R. Vol. IV at 35.) Lastly, the fact the envelope was sent from California is irrelevant under the circumstances of this case. Even assuming the state court judge was aware California was a drug source state (a statement not included in the affidavit), Dunlap's drug dog did not alert to the envelope. What would be relevant is evidence that California is a source state for stolen property, counterfeit credit cards, counterfeit identification, prescription medicines or steroids; however, no such evidence was presented in the affidavit (or at the motion to suppress hearing).

Given that the first four factors are insufficient to establish probable cause, the fact a package bearing these same characteristics was discovered in April 2004 to be carrying counterfeit credit cards does not inform the probable cause analysis.[7] The fact the drug dog did not alert to the April 2004 package is

was paid in cash but admitted it could have been paid with a check. The district court implicitly found Dunlap did not intend to mislead the state court in stating the shipping charge had been paid in cash. Reed has not alleged that Dunlap deliberately or recklessly misled the state court in making this statement.

[7] The April 16, 2004 package was sent to Marcus Smith. It is unclear from the record before us whether its sender was Robert Jones. It appears, however, that when Dunlap stated that the April 16, 2004 package contained the same criminal courier characteristics as the envelope sent to Reed in January 2005, he was referring to the fact it

irrelevant in the absence of information in the affidavit stating the dog did not alert to the envelope in this case. Indeed, Dunlap admitted the reference to the fact the drug dog did not alert to the April 2004 package was a typographical error; he meant to state the drug dog did not alert to this envelope.[8]

The fact Reed was a career criminal with numerous arrests does not establish probable cause that a package sent to him contains contraband. "Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity." *Rowland*, 145 F.3d 1194, 1204 (10th Cir. 1998); *see also United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir. 2001) (fact that defendant had fifteen-year old criminal history and his wife illegally possessed firearms a year ago is insufficient to corroborate informant's claim that defendant was making pipe bombs in his garage). The same is true of a guilty person's mail and other packages. The only investigation Dunlap conducted in order to link criminal activity to the envelope was to subject the envelope to a canine sniff and to investigate Reed and Jones' criminal records. The canine sniff failed to establish

---

too was sent from a person to a person, priority overnight, contained a handwritten airbill, was paid in cash and was sent from a California address.

[8] Again, Reed has not alleged this error was deliberate or reckless and has not contested Dunlap's testimony that the error was typographical in nature. *Corral-Corral*, 899 F.2d at 933 (an affiant's negligence or innocent mistake resulting in false statements in the affidavit is insufficient to establish knowing or reckless falsity).

the requisite link. Dunlap's criminal history investigations also failed to provide the needed connection. Although Reed had past arrests for fraud and forgery, nothing in his criminal history established that these offenses were committed via the mail or that he had previously obtained false credit cards via the mail. Nor was he currently under investigation. Thus, there was insufficient evidence linking the envelope to Reed's criminal history or any current criminal activity.

Finally, Dunlap's past experience, while not to be downplayed,[9] is not enough to save the warrant in the absence of an adequate nexus between the envelope and criminal activity.[10]

Our sequential analysis of the factors relied upon to establish probable cause should not be taken as a "divide-and-conquer" approach. *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (rejecting "divide-and-conquer" approach to

---

[9] *See United States v. Cook*, 949 F.2d 289, 292-93 (10th Cir. 1991) ("A magistrate is entitled to rely on the expert opinions of officers when supporting factual information is supplied in the affidavit."); *Corral-Corral*, 899 F.2d at 937 ("Courts frequently have relied on the expert opinion of officers in determining where contraband might be kept.").

[10] At the motion to suppress hearing, Dunlap stated that over the past ten years, he sought search warrants for approximately 100 packages and approximately ninety-eight percent of those packages had contraband in them. Of the ninety-eight percent which had contraband in them, ninety-eight percent of them contained drugs. The other two percent had steroids, counterfeit identification or counterfeit credit cards. When asked specifically how many packages he remembered containing counterfeit credit cards in "recent years," he responded "three," including the April 2004 package. (Vol. IV at 12.) Given the infrequency of Dunlap's experience with packages containing contraband other than drugs, little weight could be assigned to his statement that from past experience, packages with the same criminal courier characteristics as drug packages have contained stolen property, counterfeit credit cards, counterfeit identification, prescription medicines, and steroids.

determining whether reasonable suspicion existed). We fully appreciate the synergy of disparate elements considered collectively and recognize our obligation to be guided by the totality of the circumstances. Whether considered individually or as an integrated whole, the facts presented do not amount to probable cause. Nevertheless, as we explain next, the evidence seized pursuant to the warrant need not be suppressed because the good-faith exception to the exclusionary rule applies.

2. Good-Faith Exception

"[T]he Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Evans*, 514 U.S. at 10. However, the Supreme Court has created such a remedy, *i.e.*, the exclusionary rule, which prohibits the government from using evidence against an accused if such evidence was obtained through an illegal search or seizure. *See Weeks v. United States*, 232 U.S. 383 (1914) (barring use of evidence obtained in violation of Fourth Amendment in federal prosecution); *Mapp v. Ohio*, 367 U.S. 643 (1961) (extending exclusionary rule to state prosecutions). Thus, the exclusionary rule "operates as a judicially created remedy designed to safeguard Fourth Amendment rights [] through its deterrent effect, rather than [as] a personal constitutional right of the party aggrieved." *Leon*, 468 U.S. at 906 (quotations omitted). It is "designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 916. "As with any remedial device, [its] application has

been restricted to those instances where its remedial objectives are thought most efficaciously served." *Evans*, 514 U.S. at 11. Consequently, "[w]here the exclusionary rule does not result in appreciable deterrence, . . . its use is unwarranted." *Id.* (quotations omitted).

Applying these principles, the Supreme Court created an exception to the exclusionary rule in *Leon*. There, the Supreme Court held that evidence seized pursuant to a warrant issued by a neutral and detached magistrate later found invalid may still be admissible if the executing officer acted in objective good faith and with reasonable reliance on the warrant. *Leon*, 468 U.S. at 905, 922-23. It concluded excluding the evidence under such circumstances would not further the purposes of the exclusionary rule:

> [In general,] when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope, . . . there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. Once the warrant issues, there is literally nothing more the policeman can do in seeking to comply with the law. Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations.

*Id.* at 920-21 (citation and quotations omitted).

In determining whether we should apply *Leon*'s good-faith exception, "the good faith inquiry is confined to the objectively ascertainable question of whether

-19-

a reasonably well-trained officer would have known the search was illegal despite the issuing judge's authorization." *Corral-Corral*, 899 F.2d at 932 (quotations omitted). To answer this question, we must consider all of the circumstances and "assume [] the executing officers . . . have a reasonable knowledge of what the law prohibits." *Id.* (quotations omitted). However, an officer's "knowledge and understanding . . . and [his] appreciation for constitutional intricacies are not to be judged by the standards applicable to lawyers." *United States v. Cardall*, 773 F.2d 1128, 1133 (10th Cir. 1985). We also review the warrant and affidavit to determine whether they are "devoid of factual support." *United States v. Tisdale*, 248 F.3d 964, 972 (10th Cir. 2001) (quotations omitted); *see also Danhauer*, 229 F.3d at 1006. The government has the burden to show that its officers' reliance on the warrant was objectively reasonable. *Corral-Corral*, 899 F.2d at 932.

Although evidence seized pursuant to a warrant should only be suppressed in "unusual cases," the *Leon* Court recognized four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued: (1) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing judge wholly abandoned his judicial role and failed to perform his neutral and detached role; (3) the affidavit issued to support the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) the warrant is so facially deficient that

the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 918, 923; *Corral-Corral*, 899 F.2d at 933. In such situations, the good-faith exception to the exclusionary rule does not apply and suppression is the appropriate remedy. *Danhauer*, 229 F.3d at 1007.

Reed relies on the third situation, *i.e.*, he alleges the supporting affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. He argues the affidavit was devoid of any facts connecting the Federal Express envelope with criminal activity other than the fact the named recipient had an extensive criminal record. Reed asserts Dunlap should have known Reed's criminal history was not enough to establish probable cause to search Federal Express packages sent to him. Indeed, he claims an individual's criminal history is insufficient to establish even reasonable suspicion to detain an individual. *See United States v. Laughrin*, 438 F.3d 1245, 1248 (10th Cir. 2006) (stating knowledge of a person's prior criminal record is alone insufficient to establish reasonable suspicion to stop the person's vehicle).

The government claims the good-faith exception applies. It asserts Dunlap was truthful in laying out the reasons he had for seeking the warrant, including the fact the drug dog did not alert. Under such circumstances, the government claims suppressing the evidence would not further the purposes of the exclusionary rule because the rule was not meant to discourage police officers from truthfully obtaining warrants from a magistrate but rather to encourage them

to get warrants so the determination of probable cause is made by a magistrate. The government also argues Dunlap's affidavit was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. It asserts it was not devoid of factual support as it "clearly connects Reed, the career criminal intended recipient of the Federal Express [envelope], who has arrests and convictions for fraud and forgery[,] with a package from California that shares all the characteristics of a previous [Federal Express] package intercepted one year before that contained counterfeit credit cards." (Appellee's Br. at 22.) While admitting the affidavit is "weak," the government argues it establishes a minimally sufficient nexus between the illegal activity and the place to be searched and therefore Dunlap reasonably relied upon it. (*Id.*) We agree.

Although Dunlap's affidavit does not establish a sufficient nexus between the envelope and suspected criminal activity to amount to probable cause, it was not a "bare bones" affidavit or "devoid of factual support." The affidavit informed the state court the envelope had characteristics which in Dunlap's training and experience were associated with criminal courier activity, specifically, the transfer of contraband. While these characteristics may seem innocuous to an average person, to an experienced officer with training in drug interdiction, they point to criminal courier activity. The affidavit also linked the envelope to Reed, as he was its intended recipient. It further informed the judge that Reed had a criminal history involving drugs, fraud and forgery. Therefore,

Reed's criminal history matched the suspected criminal activity.

The affidavit also notified the judge that nine months earlier a package bearing similar characteristics was found to contain counterfeit credit cards. Additionally, it attempted to inform him that the drug dog did not alert to the envelope but mistakenly stated the dog did not alert to the April 2004 package. Although the dog did not alert to the envelope, it was not unreasonable for Dunlap to still believe it contained contraband other than those drugs his dog is trained to detect, given that a similar package nine months earlier had contained counterfeit credit cards. Also relevant to the good-faith analysis is the fact Dunlap had sought and obtained a search warrant based on similar facts nine months earlier (the April 2004 package). The issuing judge clearly erred by failing to make a critical analysis of the facts presented but that error does not render Dunlap's reliance on the warrant unreasonable. Under these circumstances, applying the exclusionary rule would not further its intended purpose—deterrence of police misconduct. It would merely correct an errant judge.

Reed relies on *United States v. Gonzales*, 399 F.3d 1225 (10th Cir. 2005). There, police officers arrested Gonzales for driving under the influence of alcohol after rolling the vehicle he was driving. Police officers conducted an inventory search of the vehicle, finding a Glock 10mm magazine containing live rounds but no matching weapon. Subsequently, they discovered Gonzales was a convicted

felon and the vehicle was registered to Honorior Contreras, who had a relationship with Gonzales' mother and resided with Gonzales. Two days after the accident, a police detective applied for a warrant to search Gonzales' residence for firearms and ammunition. In the supporting affidavit, the detective identified 321 E. Church as the place to be searched and described Gonzales' car accident and the results of the inventory search. He also stated he had two years of law enforcement experience and he "knows from [p]olice training and experience that firearm[s] are often kept at the residence as well as in vehicles." *Id.* at 1228 (quotations omitted). However, the affidavit did not specify that 321 E. Church was Gonzales' residence or that there was any other connection between that location and Gonzales, the vehicle or the suspected criminal activity. It also failed to state who owned the vehicle. After obtaining approval from his supervising officer and an assistant district attorney, the detective submitted the affidavit to a magistrate, who issued the warrant. Execution of the warrant led to the discovery of weapons and weapon-related paraphernalia.

After being indicted for being a felon in possession of ammunition and firearms, Gonzales moved to suppress the evidence arguing the warrant was not supported by probable cause and the deficiency was such that the warrant could not be relied upon in good faith. The district court agreed and we affirmed. Because the government conceded the affidavit lacked probable cause due to its failure to establish any connection between the place to be searched and Gonzales

or the suspected criminal activity, we turned directly to the good faith analysis, in particular, whether the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. We concluded good faith may exist when a minimal nexus exists between the place to be searched and the suspected criminal activity. *Id.* at 1231. Nevertheless, we found such minimal nexus lacking. *Id.* Specifically, we found the affidavit completely failed to explain why the detective believed firearms and ammunition would be found at 321 E. Church and his generally stated experience that "firearm[s] are often kept at the residence" was not supported by any facts establishing the residence belonged to or was otherwise linked to Gonzales. *Id.* (quotation omitted). We stated:

> For good faith to exist, there must be *some* factual basis connecting the place to be searched to the defendant or suspected criminal activity. When this connection is wholly absent, the affidavit and resulting warrant are "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Exclusion is appropriate in such circumstances because "reasonably well-trained" officers, exercising their own professional judgment, will be able to recognize the deficiency. Here, the warrant was "so lacking," and the officer's reliance upon it was not objectively reasonable.

*Id.* (citation omitted).

*Gonzales* is distinguishable. In *Gonzales*, the affidavit contained no information linking the place to be searched (321 E. Church) to either the defendant or the suspected criminal activity (possession of firearms and

-25-

ammunition). Indeed, the affidavit failed to specify that 321 E. Church was Gonzales' residence. The affidavit in this case linked Reed to the envelope as Reed was its intended recipient. It also contained information linking the suspected criminal activity (transfer of contraband) to the envelope. The envelope contained characteristics which in Dunlap's training and experience were associated with criminal courier activity. A previous package containing those same characteristics was found to contain counterfeit credit cards. And Reed's criminal history was consistent with and supported the suspected criminal activity. Admittedly, this case stretches *Leon's* good faith exception to its elastic limit, but a minimal (barely) nexus existed between the place to be searched, Reed and the suspected criminal activity.

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge